UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Pipe & Piling Supplies,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　　　　Defendant, | Court No. 24-00211<br><br>(PUBLIC VERSION) |

# COMPLAINT

Plaintiff Pipe & Piling Supplies ("Plaintiff," "Pipe & Piling," or "PPMTL"), by and through its attorneys, alleges and states:

## ADMINISTRATIVE DETERMINATION CONTESTED

1. This action is an appeal from the final determination issued by the United States Department of Commerce (the "Department" or "Commerce") in the administrative review of the antidumping duty order on Large Diameter Welded Pipe from Canada. The contested final results cover entries of subject large diameter welded pipe from Canada during the period of review ("POR") from May 1, 2022 through April 30, 2023.

2. Commerce published its contested final determination in the Federal Register on October 31, 2024. *See Large Diameter Welded Pipe From Canada: Final Results of Antidumping Duty Administrative Review; 2022 - 2023 (A-122-863),* 89 Fed. Reg. 86,787 (October 31, 2024) ("Final Results").

1

3. Commerce's final determinations, findings, and conclusions are set out in the issues and decision memorandum for the Final Results. *See Issues and Decision Memorandum for the Final Results of the 2022-2023 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Pipe from Canada (October 25, 2024)* ("*Final Decision Memo*").

## JURISDICTION

4. Plaintiff Pipe & Piling brings this action pursuant to Section 516A(a)(2) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2). Pipe & Piling contests the *Final Results* generally and specifically as applied to Pipe & Piling in connection with the review. This Court has jurisdiction under 28 U.S.C. § 1581(c).

## STANDING

5. Plaintiff Pipe & Piling is a foreign producer and/or exporter of subject merchandise and is therefore an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3), and 28 U.S.C. § 2631(k)(1). Pipe & Piling was also a party to the administrative proceeding from which this matter arises and thus has standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6. Commerce published notice of the contested *Final Results* on October 31, 2024. *See Final Results*, 89 Fed. Reg. 86,787.

7. Plaintiff filed a Summons with this Court on November 27, 2024, within 30 days from the date of publication of the *Final Results*. Plaintiff's Complaint is timely filed pursuant

to 19 U.S.C. § 1516a(a)(2)(A) and Rule 3 of the Rules of this Court, which requires that the Complaint be filed within 30 days of the Summons.

## STANDARD OF REVIEW

8.      The Court must hold unlawful any administrative determination by Commerce that is "unsupported by substantial evidence on the record as a whole, or is otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B).

## STATEMENT OF FACTS

9.      Paragraphs 1 through 8 are realleged and incorporated herein.

10.     On July 12, 2023, Commerce initiated the administrative review of the AD order on Large Diameter Welded Pipe (LDWP) from Canada. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 FR 44,262 (Dep't Commerce July 12, 2023). Commerce selected Pipe & Piling as the sole mandatory respondent.  *See* Commerce's Letter: Respondent Selection (August 7, 2023). Pipe & Piling, also known as "Pipe & Piling Montreal" ("PPMTL"), is a reseller of LDWP in the home market and an exporter of subject merchandise to the U.S.. *See* Section A Questionnaire Response (September 13, 2023) (AQR), at 5-6.

11.     On September 13, 2023, Pipe & Piling submitted its Section A questionnaire response, including a full discussion of its corporate organization and affiliates. Specifically, Pipe & Piling reported that it has four affiliated resellers located in Canada: (1) Pipe & Piling Supplies (Eastern) Ltd ("PP Eastern"), (2) Pipe & Piling Supplies (Central) Ltd. ("PP Central"). (3) Pipe & Piling Supplies (Western) Ltd. ("PP Eastern"), and (4) Pipe & Piling Supplies (B.C.) Ltd. ("PP BC"). *See* AQR at 8-9.  Pipe & Piling also has one affiliated company -- Pipe & Piling

3

Supplies USA, Ltd. ("PP USA") -- located in the U.S. who imports LDWP from PPMTL. *Id*. Pipe & Piling and these affiliated five resellers are owned by the same parent company. AQR at Exhibit A-2. Finally, Pipe & Piling is affiliated with two LDWP producers, through family trust, in Canada -- 1045761 Ontario Ltd. (Operated as Canadian Phoenix Steel Products) ("Phoenix"), and Spiralco Inc. ("Spiralco"). *Id*. The subject merchandise is all produced by Phoenix and Spiralco. *Id.*

12. On October 2, 2023, Pipe & Piling submitted its initial Section B and C questionnaire response. *See* Section B and C Questionnaire Response (October 2, 2023) (B/CQR).

13. In its Section B response, Pipe & Piling reported all of PPMTL's sales made during the POR. *See* BQR, at 2. In doing so, Pipe & Piling first reported PPMTL's sales followed by its four affiliated resellers' (*i.e.*, PP BC, PP Western, PP Central, PP Eastern) downstream sales in the home market sales database. *See* BQR, at B-1. Pipe & Piling then reported PPMTL's adjustments and expenses. *Id*. Pipe & Piling did not report sales made by Phoenix and Spiralco.

14. In its Section B response, Pipe & Piling reported yard expenses and a small amount of bank fees incurred by PPMTL during the POR as direct selling expenses. BQR at 34, 41.

15. Pipe & Piling engaged third parties to provide coating and transportation services of subject merchandise. *See* BQR at 29. Pipe & Piling charges these services to customers. *Id*. Accordingly, Pipe & Piling separately reported the freight and coating revenues in the initial sales database. *Id.*

16.     In its Section C response, Pipe & Piling reported yard expenses incurred by PPUSA during the POR as direct selling expenses. *See* CQR at 32. Pipe & Piling similarly reported the coating and freight revenues in the U.S. sales database. *Id.* at 27.

17.     Pipe & Piling stated that it had no further manufacturing incurred in the United States for subject merchandise during the POR. Accordingly, Pipe & Piling did not submit a Section E questionnaire response, nor submit the further manufacturing cost (FURMANU) in the Section C response. See AQR at 21-22; CQR at 49.

18.     On October 6, 2023, Pipe & Piling submitted its initial Section D questionnaire response, wherein Pipe & Piling described its accounting systems including a software program called SAGE the company used as its general accounting record as well as a software program called WebOE the company used as a sales ledger. *See* Section D Questionnaire Response (October 6, 2023) (DQR), at D-8.

19.     On October 18, 2023, Commerce issued the first Section A supplemental questionnaire to Pipe & Piling, requesting, *inter alia*, additional information about Pipe & Piling's affiliates. See Supplemental Section A Questionnaire (October 18, 2023).

20.     On November 1, 2023, Pipe & Piling submitted its response to the first Section A supplemental questionnaire. *See* Section A Supplemental Questionnaire Response (November 1, 2023).

21.     Based on the initial responses, Commerce determined on December 8, 2023, that Pipe & Piling, Phoenix, and Spiralco are affiliated within the meaning of section 771(33) of the Tariff Act of 1930, as amended (the Act). *See* Commerce Memorandum: Preliminary Affiliation and Collapsing Memorandum (December 8, 2023). The memorandum, however, did not address

5

other affiliates in Canada (*i.e.,* PP BC, PP Western, PP Central, PP Eastern) or the United States (*i.e.,* PP USA). *Id*.

22. On January 26, 2024, Commerce issued a Supplemental Section A - D Questionnaire, which contained additional questions for Section A ("Second Section A Supplemental Questionnaire"), and the first supplemental questionnaires for Sections B, C and D ("First Section BCD Supplemental Questionnaires"). Commerce requested that Pipe & Piling revise its "response, as necessary, to sections B, C, and D of Commerce's August 9, 2023, initial questionnaire (IQR) as needed to reflect the collapsed entity, including sales made by Phoenix and Spiralco." *See* Supplemental Questionnaire (January 26, 2024).

23. On February 26, 2024, Pipe & Piling timely submitted its response to the Supplemental Section A-D Questionnaire. *See* Supplemental Section A-D Questionnaire Response (February 26, 2024) ("SAQR/SBQR/SCQR/SDQR").

24. In its Section B supplemental response, Pipe & Piling included home market sales made by all seven affiliates (*i.e.*, PPMTL, Canadian Phoenix, Spiralco, PP BC, PP Western, PP Central, and PP Eastern). *See* SBQR. Pipe & Piling also reported all of its affiliates' downstream sales to unaffiliated customers in a consolidated home market sales database. *See* SBQR, at Exhibit SB-1. As a result, Pipe & Piling replaced almost all sales expense and adjustment worksheets that had been submitted in its initial Section B response. *Id*. Pipe & Piling clearly explained the reasoning underpinning all of the changes made to its initial response. *See* SBQR.

25. Pipe and Piling explained in the supplemental response that its accounting systems (*i.e.,* SAGE and WebOE) are "not sophisticated enough to report any selling expense on a transaction specific-basis," and "{y}ard expenses are related to the operations in each company's yard used for storage and logistics of materials." *See* SBQR, at 15, 17; *see also*

6

SAQR at 21. Accordingly, Pipe & Piling revised the yard expenses incurred by each company in the home market sales as an indirect selling expense in the consolidated sales database. *Id.* at 15-16. For the same reason, Pipe & Piling revised bank charges for home market sales as indirect selling expenses in the consolidated sales database. *Id.* at 16-17.

26. Pipe & Piling was able to identify invoice-specific discounts which included coating and freight revenue. *See* SBQR, at Exhibit SB-14a through SB-14c. Pipe & Piling was unable to separately identify coating and freight revenues. *Id.* In response to Commerce's request to report "these revenues on a transaction-specific basis," Pipe & Piling "added field OCHDISH, to report all other charges (*e.g.*, freight, etc.) and discounts that were {separately} itemized on the same invoices" in the consolidated HM sales database. *Id.* at 14-15; Exhibit SB-14a through SB-14c.

27. Pipe & Piling does not prepare consolidated financial statements in the normal course of business. *See* SAQR at 2, 4. For home market sales, Pipe & Piling therefore provided separate reconciliation worksheets for all seven affiliates (i.e., PPMTL, Canadian Phoenix, Spiralco, PP BC, PP Western, PP Central, and PP Eastern). In each of the seven worksheets, Pipe & Piling reconciled the reported sales to the financial statements of the respective company. *See* SBQR, at Exhibits 4a, 4b & 4c. Pipe & Piling also reconciled the sales data to the company's sales operation system WebOE and/or the general accounting system SAGE that is applicable to each company. *Id.* Accordingly, Pipe & Piling reconciled each company's financial statements to the accounting records (i.e., SAGE) and then to its sales records (*i.e.*, WebOE). *See* SBQR, at Exhibit SB-4a.

28. In its Section C supplemental response, Pipe & Piling provided a reconciliation of its U.S. sales to PPMTL's financial statements. *See* SCQR, at Exhibit SC-2a. In the worksheet,

7

Pipe & Piling first reconciled PPMTL's financial statements to its financial accounting system (SAGE) and then to its sales ledger as recorded in its operational system WebOE. *Id*.

29. Pipe & Piling described its general HM and US sales reconciliation methodology in its initial Section B response, for which PPMTL reconciled the reported sales with its general ledger and POR trial balances. *See* BQR at 6-7. In the supplemental response, Pipe & Piling reconciled the total quantity of each company's reported sales to the company's sales ledger. *See* SBQR at 3. Pipe & Piling then reconciled the total value of sales in the sales report to the company's financial systems (SAGE and WebOE) or financial statements. *See* SBQR, at Exhibits 4a, 4b & 4c. Pipe & Piling prepared reconciliation worksheets for all seven affiliates. *Id*. In the accompanying worksheets, Pipe & Piling used color codes and arrows to connect the sales data to the company's accounting systems to make the data as digestible as possible. *Id*. Where there were discrepancies, Pipe & Piling explained them via line items in the worksheets. *Id*.

30. While preparing the supplemental questionnaire response, Pipe & Piling discovered the first time that one affiliated reseller had further processed a small volume of subject merchandise in the U.S. before that merchandise was sold to the end user. *See* SCQR at 12. The cost of the referenced further processing was *de minimis*. *Id*. After this discovery, Pipe & Piling promptly disclosed the further processing information in its Section C supplemental response. *Id*. Pipe & Piling also prepared a worksheet for the cost of further processing and reported the cost (FABRICU) in the revised U.S. sales list. *See* SCQR, at Exhibit SC-1 and Exhibit SC-20.

31. Commerce did not ask any more questions of Pipe & Piling about its revised home market and U.S. sales reporting and sales reconciliations after Pipe & Piling submitted its

Supplemental Section A-D Questionnaire Response on February 26, 2024, nor did Commerce request any additional information about Pipe & Piling's further processing or costs, notwithstanding that there were three months remaining before the preliminary results were due to issue.

32. On May 21, 2024, Commerce issued its *Preliminary Results* in this case, rejected all of Pipe & Piling's submitted information, and applied total "adverse facts available" ("AFA") to Pipe & Piling. *See Large Diameter Welded Pipe from Canada: Preliminary Results and Rescission, in Part, of Antidumping Duty Administrative Review; 2022-2023;* 89 Fed. Reg. 44,635 (Dep't of Commerce May 21, 2024) ("*Preliminary Results*") and accompanying issues and decision memorandum dated May 10, 2024 ("*Preliminary Decision Memo*"). Commerce assigned Pipe & Piling a punitive dumping margin of 50.89 percent, which is the highest rate from the petition that gave rise to the AD order in this proceeding. *Preliminary Decision Memo,* at 11.

33. Commerce's *Preliminary Decision Memo* purported to justify its decision to use total AFA based on, *inter alia*, its findings that Pipe & Piling: "(1) failed to provide clear and consistent narrative explanations; (2) revised its reporting of certain adjustments {(*i.e.*, yard expenses, bank charges and single column for discount)} without being directed to do so by Commerce; (3) failed to provide a response to section E of the Initial AD Questionnaire; and (4) failed to provide complete and supported sales reconciliations for its home market and U.S. sales to its financial statements." *Preliminary Decision Memo,* at 4.

34. On June 20, 2024, Pipe & Piling filed a case brief addressing each of the issues identified in the Preliminary Decision Memo. *See* Case Brief (June 20, 2024). Pipe & Piling argued that there was no basis on which Commerce could or should apply total AFA and assign

the highest rate from the petition to Pipe & Piling because the company had demonstrably cooperated to the best of its ability during the proceeding. *Id*.

35. Pipe & Piling further argued that, to the extent Commerce (wrongly in Pipe & Piling's view) were to continue to find that it could not rely on Pipe & Piling's data for the margin calculation, Commerce should apply the cash deposit rate in place during the period of review as non-adverse facts available. *Id*.

36. On October 25, 2024, Commerce issued its final determination, rejecting Pipe & Piling's arguments and continuing to apply total adverse facts available. See *Final Decision Memo*, at 3-13. The final determination was published in the Federal Register on October 31, 2024. *See* 89 Fed. Reg. 86,787.

## STATEMENT OF CLAIMS

Commerce's Final Results are unsupported by substantial evidence, arbitrary, unreasonable, and otherwise not in accordance with law as discussed below.

## COUNT I
### (Unlawful Use of AFA)

37. Plaintiff incorporates paragraphs 1 through 36 as fully set forth herein.

38. Commerce unlawfully and unreasonably refused to use Plaintiff's submitted data and instead applied total adverse facts available ("AFA") in the *Final Results*.

39. The Tariff Act of 1930 (the "Act"), permits Commerce to use "facts otherwise available" in reaching determinations, but only if it meets certain threshold requirements specified in the statute. *See* 19 U.S.C. § 1677e(a). This includes, *inter alia*, a finding that: (1)

"necessary information is not available on the record"; or (2) that an interested party "withholds information" that has been requested, "significantly impedes a proceeding", or otherwise provides information that "cannot be verified." *Id.* The statute also mandates that Commerce "shall not decline to consider information that is submitted by an interested party and is necessary to the determination" if the information is submitted by the deadlines, can be verified, is not incomplete, and can be used without difficulties. 19 U.S.C. § 1677m(e).

40. Commerce purports to find that "Pipe & Piling failed to cooperate to the best of its ability." *See Final Decision Memo*. But Commerce's findings on this point are unsupported by substantial evidence and otherwise unlawful. Plaintiff did not withhold any information, impede the proceeding, or fail to provide necessary information. Plaintiff at all times provided all information requested and Commerce had all information on the record necessary to calculate Plaintiff's dumping margin. Indeed, Plaintiff (1) took the requisite steps to provide clear, consistent narrative explanations of the data and its methodologies, (2) did not provide unsolicited information given that the revised adjustments were "necessary," (3) reported the cost for *de minimis* further manufacturing in the U.S., and (4) provided complete, accurate home market and U.S. sales reconciliations. Altogether, Pipe & Piling provided more than 1,500 pages of documents and narratives, or more than 170 worksheets and exhibits. But the Department nevertheless unreasonably and unlawfully refused to consider this information.

41. Commerce's decision to use total adverse facts available thus was arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

## COUNT II
**(Alleged Failure to Provide Clear and Consistent Narrative Explanations)**

42. Paragraphs 1 through 41 are realleged and incorporated herein.

11

43. Commerce unlawfully determined that Pipe & Piling failed to provide clear and consistent narrative explanations in the supplemental questionnaire. *See Final Decision Memo,* at 4-5. In this regard, Commerce determined that Pipe & Piling did not explain yard expenses that were treated as indirect selling expenses or explain coating and freight revenues that were reported together with discount in a single field. *Id.*

44. Commerce's findings are contrary to the record and otherwise unlawful. Pipe & Piling responded to all questions to the best of its ability. Pipe & Piling explained that yard expenses were related to each company's operation used for storage and logistics of materials. *See* SBQR at 16. The company's accounting systems do not distinguish whether the yard expenses and bank charges are associated with direct or indirect selling expenses. *Id.* at 14-17. Likewise, coating and freight revenues and discount were reflected in an aggregate amount by invoices. Based on the records that the company maintains in the ordinary course, Pipe & Piling was obliged to allocate the yard expenses and bank charges to indirect selling expense, and to report the coating and freight revenues with discount in a single field OCHDISH. *Id.* at 14.

45. Commerce never requested additional information about the change of these reporting methodologies from Pipe & Piling after receiving the revised Section B questionnaire response and worksheets, nor did it inform Pipe & Piling that the responses were deficient despite the fact that the agency had months of time in which to do so prior to the deadline for the issuance of its preliminary determination.

46. Thus, Commerce's determination regarding Pipe & Piling's alleged failure to provide clear and consistent narrative explanations and its application of AFA in this context were arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

## COUNT III
### (Unlawful AFA Findings based on Revised Adjustments)

47.     Paragraphs 1 through 46 are realleged and incorporated herein.

48.     Commerce unlawfully determined that Pipe & Piling "made several unwarranted changes in its supplemental responses." *See Final Decision Memo* at 5-6. In this regard, Commerce found that Pipe & Piling reported yard expenses as indirect selling expenses and reported the coating and freight revenues with discount in a single column without being directed to do so. Id.

49.     Commerce's findings are contrary to the record and otherwise unlawful. In the supplemental questionnaire, Commerce requested that Pipe & Piling revise its Section B response "as needed" to reflect the collapsed entity. Accordingly, Pipe & Piling recast its yard expenses and bank charges as indirect selling expenses, and it also reported coating and freight revenues with discount in a single column OCHDISH, due to the constraints of the various companies' accounting systems. *Id*. at 14-17. Contrary to Commerce's determination, Pipe & Piling did not make any unsolicited changes.

50.     Commerce never informed Pipe & Piling that the revised Section B questionnaire response, worksheets and databases contain unsolicited information.

51.     Thus, Commerce's findings about Pipe & Piling's revised adjustments and the agency's rejection of Pipe & Piling's data and use of AFA were arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

## COUNT IV
### (Unlawful AFA Findings based on Unreported Section E Questionnaire)

52.     Paragraphs 1 through 51 are realleged and incorporated herein.

13

53. Pipe & Piling's alleged failure to provide a response to Commerce's Section E questionnaire for further processing does not constitute substantial evidence supporting Commerce's decision to apply a total AFA.

54. Pipe & Piling's further processing in the U.S. during the POR accounted for about [ ] percent of all reported U.S. sales. *See* Exhibit SC-1. The cost of further processing was approximately [ ] percent of the total cost of this merchandise. *Id.* Pipe & Piling discovered this small further processing cost when it was preparing indirect selling expenses requested by the First Section BCD Questionnaire response. *See* SCQR at 12. Pipe & Piling promptly disclosed this information and provided the cost for further processing in its Section C supplemental response. *Id*.

55. Commerce never requested additional information about further processing from Pipe & Piling, nor did it inform Pipe & Piling that the further processing response in the supplemental response was deficient.

56. "Before making an adverse inference, Commerce must examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation in responding to Commerce's requests for information." *National Nail Corp. v. United States,* 390 F.Supp. 3d 1356, 1382 (Ct. Int'l Trade 2019). Where "Commerce made no such examination," the Federal Circuit found invocation of an adverse inference to be unsupported by substantial evidence on the record. *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1386 (Fed. Cir. 2022).

57. Commerce's determination to apply total AFA in part because of alleged unreported Section E data is arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

**COUNT V**
**(Alleged Failure to Provide Complete and Supported**
**HM and U.S. Sales Reconciliations)**

58. Paragraphs 1 through 57 are realleged and incorporated herein.

59. Commerce unlawfully based its AFA decision on unsubstantiated and unlawful findings about Pipe & Piling's HM and U.S. sales reconciliations. *See Final Decision Memo*, at 8-10. Commerce's claim that Pipe & Piling's failure of providing "detailed explanations of its reconciliation methodologies" is baseless. *Id*.

60. Record evidence established that Pipe & Piling does not prepare a consolidated financial statement. *See* SAQR at 4. Accordingly, Pipe & Piling provided separate home market reconciliation worksheets for all seven affiliates (*i.e.*, PPMTL, Canadian Phoenix, Spiralco, PP BC, PP Western, PP Central, and PP Eastern). *See* SBQR, at Exhibits 4a, 4b & 4c. In each of the seven worksheets, Pipe & Piling reconciled the reported sales to the financial statements of the respective company. *Id*. Pipe & Piling also reconciled its sales data to the company's sales operation system (*i.e.,* WebOE) and/or the general accounting system (*i.e.,* SAGE) that each company deploys. *Id.* Pipe & Piling explained this reconciliation process in the narrative of its Section B supplemental response. *See* SBQR at 2-3.

61. Record evidence further confirms that Pipe & Piling provided a complete and accurate reconciliation of its U.S. sales to PPMTL's financial statements and to company's financial accounting system (*i.e.*, SAGE) as well as the sales operational system (*i.e.*, WebOE). *See* SCQR, at Exhibit SC-2a.

62. Thus, Commerce's use of AFA based on the claim that Pipe & Piling failed to provide complete and supported HM and U.S. sales reconciliations was arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

## Count VI
## (Unlawful Failure to Provide Notice)

63.  Plaintiff incorporates and realleges paragraphs 1 through 62 as fully set forth herein.

64.  The Department must also comply with the notice and remedial requirements of 19 U.S.C. § 1677m(d).  Thus, if Commerce determines that a response does not comply with the request for information, the Department "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).

65.  Commerce failed to comply with these notice and remedial provisions.  Pipe & Piling timely provided all information requested regarding its sales and further processing information, etc..  Commerce had this information for several months before the preliminary results, but it never adequately notified Plaintiff of any potential deficiencies after Pipe & Piling provided its first revised Section B, C and D supplemental response.

66.  Thus, Commerce's use of AFA in the *Final Results* was arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

## COUNT VII
## (Commerce Failed to Corroborate the AFA Rate)

67.  Paragraphs 1 through 66 are realleged and incorporated herein.

68.  Commerce's failure to assign the cash deposit rate in effect at the time of entry (*i.e.,* 7.90 percent) to Pipe & Piling's POR entries in the *Final Results* is unlawful.

69. In the *Final Results*, Commerce assigned Pipe & Piling the petition rate of 50.89 percent, which is secondary information. *See Final Decision Memo*, at 10-11.

70. When relying on secondary information rather than on information obtained during the review, the statute instructs that Commerce "shall, to the extent practicable, corroborate that information from independent source." *See* 19 U.S.C. § 1677e(c)(1). Commerce's regulation provides that independent sources may include published price lists, official import statistics and customs data, and information obtained from interested parties during the instant review. *See* 19 C.F.R. § 351.308(d).

71. Commerce acknowledges that "there is no information on the record of this review to corroborate the highest dumping margin alleged in the petition." *See Prelim Decision Memo*, at 11; *Final Decision Memo*, at 13.

72. A rate based on the highest rate from the investigation of the AD order cannot be used to corroborate the AFA rate assigned to Pipe & Piling, because it is not an "independent source" of information in the instant review.

73. Thus, Commerce failed to provide independent sources of probative information to corroborate Pipe & Piling's AFA rate, and Commerce's refusal to apply the cash deposit rate in effect at the time of entry to Pipe & Piling's POR entries is arbitrary and unlawful.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, declare that Commerce erred in the Final Results in the subject review alleged herein, and remand to the Department with instructions to publish new final results in conformity with the opinion of this Court. Specifically, the Plaintiff prays that this Court remand Commerce to

determine that the application of adverse facts available to Pipe & Piling is unwarranted. Plaintiff otherwise requests that the Court grant such additional relief as the Court may deem just and proper.

                                                                              Respectfully submitted,

                                                                              */s/ Alexander H. Schaefer*
                                                                              Alexander H. Schaefer, Esq.
                                                                              Pierce Lee, Esq.
                                                                              Weronika Bukowski, Esq.

                                                                              Crowell & Moring LLP
                                                                              1001 Pennsylvania Ave., N.W.
                                                                              Washington, D.C.  20004

                                                                              *Counsel for Pipe & Piling Supplies*

December 27, 2024

## CERTIFICATE OF SERVICE

  I certify that on December 27, 2024, I electronically filed the foregoing Complaint with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                /s/ Alexander H. Schaefer
                Alexander Schaefer
                **CROWELL & MORING LLP**
                1001 Pennsylvania Avenue, N.W.
                Washington, D.C. 20004-2595
                (202) 624-2500
                aschaefer@Crowell.com
                Counsel for Pipe & Piling Supplies

                Dated: December 27, 2024

**CERTIFICATE OF SERVICE**

        Pursuant to Rule 3(f) of the Court of International Trade, I, Alexander H. Schaefer, hereby certify that I have caused copies of the Complaint, in Pipe & Piling Supplies v. United States, Case No. 24-00211, be served upon the parties in the administrative proceeding, by the U.S. certified mail, return receipt requested on December 27, 2024.

Timothy C Brightbill, Esq.
Representative of The American Line Pipe Producers Association Trade Committee
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC 20036
Phone: 202-719-7000
Email: tbrightbill@wiley.law

Nancy A Noonan, Esq.
Representative of Canam Group Inc.
**ArentFox Schiff LLP**
1717 K St., NW
Washington, DC 20006
Phone: 2028576000
Email: nancy.noonan@afslaw.com

Craig A. Lewis, Esq.
Representative of Evraz Inc. NA Canada, Evraz Inc. NA
**Hogan Lovells US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Phone: 202-637-5600
Email: craig.lewis@hoganlovells.com

        /s/ Alexander H. Schaefer
        Alexander Schaefer
        **CROWELL & MORING LLP**
        1001 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004-2595
        (202) 624-2500
        aschaefer@Crowell.com
        Counsel for Pipe & Piling Supplies