## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN

| | |
|---|---|
| PIPE & PILING SUPPLIES, )<br><br>*Plaintiff,* )<br><br>v. )<br><br>UNITED STATES, )<br><br>*Defendant,* )<br><br>and )<br><br>AMERICAN LINE PIPE PRODUCERS )<br>ASSOCIATION TRADE COMMITTEE )<br><br>*Proposed* )<br>*Defendant-Intervenor.* ) | Court No. 24-00211 |

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>

Alex Schaefer
Pierce Lee
Weronika Bukowski

Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2773
aschaefer@crowell.com

*Counsel for Pipe & Piling Supplies*

Dated: April 28, 2025

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1
STATEMENT OF THE FACTS...........................................................................3
   I.    THE CUSTOMS COURTS ACT OF 1980, THE USMCA, AND BINATIONAL PANEL REVIEW ..................................................................................................3
   II.   PIPE & PILING'S HARMLESS FILING ERROR AND GOOD FAITH EFFORTS TO COMPLY WITH PROCEDURE....................................................................6
ARGUMENT ........................................................................................................7
   I.    Jurisdiction and Standard of Review....................................................7
   II.   The Availability of Equitable Tolling is a Constitutional Question Over Which This Court Expressly Has Jurisdiction Under the Special Rule, But Which Must Be Referred to a 3-Judge Panel ..................................................................................................9
      1.    The Scope of Judicial Review and Equitable Relief under the Special Rule Are Not Just Statutory, But Constitutional Questions that Implicate Separation of Powers..............10
      2.    The Government's Interpretation of the Special Rule Would Create a Constitutional Conflict Between the USMCA and Its Implementing Statute ............................................16
      3.    Denying Equitable Relief to FTA-Member Countries But Allowing it For Non-FTA Member Countries Would Violate the Due Process Clause of the Fifth Amendment..........17
      4.    Prior Holdings on the Availability of Judicial Review and Equitable Tolling Are Not Binding and Hold no Precedential Weight ........................................................................19
   III.   The Specific Facts and Context of This Case Merit the Application of Equitable Tolling 20
CONCLUSION.....................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Cast Iron Pipe Co. v. United States*,
    405 F. Supp. 3d 1378 (Ct. Int'l Trade 2019) ........................................................... 11, 23, 24

*Anaheim Gardens v. United States*,
    444 F.3d 1309(Fed. Cir. 2006) ...................................................................................9

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006) ...................................................................................................15

*Bhullar v. United States*,
    27 C.I.T. 532 (2003), *aff'd*, 93 F. App'x 218 (Fed. Cir. 2004) ......................................11, 23

*Boechler, P.C. v. Comm'r of Internal Revenue*,
    596 U.S. 199 (2022) ...................................................................................................14

*Canadian Wheat Bd. v. United States*,
    580 F. Supp. 2d 1350 (Ct. Int'l Trade 2008), *judgment aff'd*, 641 F. 3d 1344
    (Fed. Cir. 2011) .........................................................................................................9

*Crowell v. Benson*,
    285 U.S. 22 (1932) .....................................................................................................10

*Duferco Steel, Inc. v. United States*,
    403 F. Supp. 2d 1281 (Ct. Int'l Trade 2005) ...............................................................9

*Empire Healthchoice Assur., Inc. v. McVeigh*,
    547 U.S. 677 (2006) ...................................................................................................17

*Foster v. Neilson*,
    27 U.S. 253 (1829), *overruled on other grounds by United States v.*
    *Percheman*, 32 U.S. 51 (1833) ...................................................................................19

*Gov't of Canada v. United States*,
    686 F. Supp. 3d 1320 (Ct. Int'l Trade 2024) ...............................................................20

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
    815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ...............................................................10, 26

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999) ...................................................................................................15

*Holland v. Florida*,
    560 U.S. 631 (2010) ...................................................................................................16

*Icdas Celik Enerji Tersane v. Ulasim Sanayi, A.S.*,
106 F. Supp. 3d 1328 (Ct. Int'l Trade 2015)......................................................14

*Irwin v. Dep't of Veterans Affs.*,
498 U.S. 89 (1990) ......................................................................................... 14, 26

*Kolovrat v. Oregon*,
366 U.S. 187 (1961) ................................................................................................18

*Marbury v. Madison*,
5 U.S. 137 (1803) ...................................................................................................12

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ..............................................................................................21

*Medellín v. Texas*,
552 U.S. 491 ...........................................................................................................18

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
598 U.S. 288 (2023) ..............................................................................................14

*Murray v. Schooner Charming Betsy*,
6 U.S. 64 (1804) .....................................................................................................19

*Oneida Cnty., New York v. Oneida Indian Nation of New York State*,
470 U.S. 226 (1985) ..............................................................................................17

*Pixton v. B & B Plastics, Inc.*,
291 F.3d 1324 (Fed. Cir. 2002)...............................................................................9

*PSC VSMPO-Avisma Corp. v. United States*,
688 F.3d 751 (Fed. Cir. 2012).............................................................................21

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) ........................................................................................... 11, 24

*Santos-Zacaria v. Garland*,
598 U.S. 411 (2023) ..............................................................................................14

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......................................................................................... 12, 23

*Trusted Integration, Inc. v. United States*,
659 F.3d 1159 (Fed. Cir. 2011)..............................................................................9

*United States v. Lee Yen Tai*,
185 U.S. 213 (1902) ..............................................................................................19

*Webster v. Doe,*
    486 U.S. 592 (1988) ...................................................................................12

*Zivotofsky v. Kerry,*
    576 U.S. 1 (2015) .....................................................................................12

**Statutes**

19 U.S.C. § 1516a ............................................................................................*passim*

19 U.S.C. § 1677m(d) .............................................................................................25

19 U.S.C. § 4501 ......................................................................................................7

19 U.S.C. § 4512(a)(1) .................................................................................. 2, 17, 21

19 U.S.C. § 4584 ....................................................................................................13

28 U.S.C. § 1581(c) .................................................................................................9

28 U.S.C. § 1585 .............................................................................................. 3, 21

United States-Canada Free-Trade Agreement Implementation Act of 1988, Pub.
    L. No. 100-449, tit. IV, 102 Stat. 1851, 1878-98 (1988) (CFTA
    Implementation Act) ............................................................................................4

United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-
    113, tit. IV, 134 Stat. 11, 61-66 (2020) ..............................................................7

**Other Authorities**

89 Fed. Reg. 44,635 ..................................................................................................7

89 Fed. Reg. 86,787 ..................................................................................................7

*Alan M. Rugman,* Academy of International Business (June 2009),
    https://aib.msu.edu/fellow/50/Alan-M-Rugman ...................................................6

Alan M. Rugman and Andrew D.M. Anderson, *Administered Protection in
    America* 13-14 (Croom Helm, 1987) .............................................................5, 19

Alan R. Rugman, *A Canadian Perspective on U.S. Administered Protection and
    the Free Trade Agreement,* 40 Me L Rev 305, 321 (1988) ............................5, 19

*Hearing on H.R. 6394 Before the Subcomm. on Monopolies &Commercial Law of
    the H. Comm. on the Judiciary,* 96th ...................................................................3

Susan A. Maxson, *The Binational Dispute-Resolution Panel Created by the United States-Canada Free Trade Agreement: What Did Canada Win?*, 1990 U. Chi. L. Rev. 653, 662 (1990)...........................................................................5

USMCA. Rugman, *A Canadian Perspective on U.S. Administered Protection and the Free Trade Agreement*, 40 Me L Rev 305, 321 (1988). Third.......................................25

## INTRODUCTION

Plaintiff Pipe & Piling Supplies ("Plaintiff" or "Pipe & Piling") respectfully opposes the International Trade Commission's and Proposed Defendant-Intervenor's motion to dismiss this action. Pipe & Piling concedes that it made a filing error, as pointed out by the Government. *See* Mot. to Dismiss, ECF No. 24. Plaintiff filed its motion for judicial review of this action 27 days after the date of publication of the Department of Commerce's final results in the Federal Register at issue in this case, instead of providing notice 20 days after and filing 31 days after. *Id.* But the Government goes too far in arguing that this Article III court lacks subject matter jurisdiction or that Plaintiff has failed to state a claim. *Id.* As an Article III court and as intended under the United States-Mexico-Canada Agreement ("USCMA"), the Court of International Trade ("CIT") has limited equitable jurisdiction to determine on a case-by-case basis whether equitable tolling is warranted in the interests of fairness and accuracy.

The *statutory* notice timing requirements of 19 U.S.C. § 1516a(g)(3)(B) ("the Special Rule") were meant to implement the USMCA and cannot be interpreted as jurisdictional without contradicting the intent of both Congress and the Parties to the treaty itself. *See* 19 U.S.C. § 1516a(g); USMCA Art. 10.12 ("Review of Final Antidumping and Countervailing Duty Determinations"). Canada fought for the inclusive of binational panel reviews to (1) counter perceived U.S. trade protectionism in antidumping and countervailing duty cases ("AD/CVD"), and (2) to provide more opportunities to challenge arbitrary and capricious agency actions. *See infra* Statement of Facts, Section I. And before the USMCA and its predecessors, Congress intentionally expanded access to judicial review, including for domestic importers. *Id.* As such, this Court has previously held that equitable tolling and

1

other relief is available in non-USMCA AD/CVD cases. *Id.* The binational panel review provisions were intended to do exactly the same: Canada pushed for binational panel review as an *alternative* to judicial review to counter perceived U.S. trade protectionism and to provide greater opportunities to challenge arbitrary and capricious agency actions. *See infra* Statement of Facts, Section I. The USMCA and its Implementing Act also expressly state that the treaty is not intended to be inconsistent with any law of the United States, and the USMCA directs the Parties to "adopt or maintain rules of procedure based, where appropriate, on judicial rules of appellate procedure, and shall include rules concerning: … computation and extensions of time." 19 U.S.C. § 4512(a)(1); USMCA Art. 10.12(14). Federal rules of procedure and CIT precedent both allow this Court to provide equitable relief, and the USMCA does not and was not intended to change that.

If the Special Rule's timing requirements are *jurisdictional*, in contradiction to Congress's intent, Canada and the United States' intent, and to the Supreme Court's repeated rulings on the presumption against procedural "claims-processing" rules as such, then as interpreted by the Government it would strip all potential for any kind of review whatsoever after a single procedural error—no matter the cause or context. *See infra* Argument, Section II. Such an interpretation cannot prevail without violating the USMCA, its implementing statute, and the Constitution itself. And the very question presents a variety of constitutional questions that, under 19 U.S.C. § 1516a(g)(4)(B), only a 3-panel judge of the CIT can properly decide. This Court should refer those issues to such a panel for a holding on whether subject matter jurisdiction exists to decide whether equitable tolling may be applied on a case-by-case basis under the Special Rule. After such a holding is obtained, this Court should find that equitable tolling does apply and that the facts of this case warrant its application.

## STATEMENT OF THE FACTS

I.   **THE CUSTOMS COURTS ACT OF 1980, THE USMCA, AND BINATIONAL PANEL REVIEW**

In 1979, the Trade Agreements Act "substantially expanded the opportunity for judicial review of antidumping and countervailing duty determinations," and "for the first time, authorized the Customs Court to grant injunctive relief in limited circumstances." Pub. L. No. 96-39, 93 Stat. 144, 19 U.S.C. § 2501 et seq.; *Hearing on H.R. 6394 Before the Subcomm. on Monopolies & Commercial Law of the H. Comm. on the Judiciary*, 96th Cong. 7 (1980) (hereinafter "Hearing on H.R. 6394") (statement of Senator Dennis DeConcini). In 1980, Congress renamed the CIT and further expanded its jurisdiction, establishing that this is an Article III court in possession of "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585; the Customs Court Act of 1980, Pub. L. No. 96–417, 94 Stat. 1727.

The purpose of this broad jurisdictional grant was to "make it clear to those who suffer an alleged injury in this area, that they may seek redress in a court with confidence that their case will be heard on the merits—not decided on jurisdictional grounds," as well as to simplify the "entirely too complex" procedural rules of this Court's predecessors and their "very peculiar, illogical structure and jurisdiction[.]" Hearing on H.R. 6394 at 4 (statement of Senator Dennis DeConcini).

In 1988, the United States entered into a free trade agreement ("FTA") with Canada, the United States-Canada Free-Trade Agreement ("CFTA"), which was replaced by the North American Free Trade Agreement ("NAFTA") in 1994. *See* United States-Canada Free-Trade Agreement Implementation Act of 1988, Pub. L. No. 100-449, tit. IV, 102 Stat. 1851, 1878-98 (1988) (CFTA Implementation Act); North America Free Trade Agreement Implementation

3

Act, Pub. L. No. 103-182, tit. IV, 107 Stat. 2057, 2129-48 (1993) (NAFTA Implementation Act). Both of these FTAs provided for binational panel review despite sharp debates over the constitutionality of panel review for AD/CVD cases and whether the replacement of judicial review violates Article III and the Appointments Clause of Article II.

For example, U.S. Senators Dennis DeConcini and Howell T. Heflin stated that, "Even though elimination of judicial review is not the stated goal of the [CFTA] and decisions by U.S. courts were not seen as the problem in the negotiations with Canada [], Congress is being asked to take a dangerous step toward undoing the judicial system it has carefully developed over the past 200 years." S. REP. 100-509, at 70, *as reprinted in* 1988 U.S.C.C.A.N. 2395, 2464 (Additional Views by Senators Dennis DeConcini and Howell T. Heflin). Senators Orrin G. Hatch, Strom Thurmond, and Gordon Humphrey countered these fears by pointing to the CFTA's exemption for constitutional questions to preserve necessary Article III review, and argued that the Appointments Clause concerns could be resolved by drafting the implementing legislation such that panel decisions are not "automatically binding as a matter of domestic law." *Id.* at 2466—67 (Additional Views by Senators Orrin G. Hatch, Strom Thurmond and Gordon Humphrey). These limitations theoretically preserved the constitutionality of the CFTA and its successors, NAFTA and the USMCA, but they also illustrate that binational panel review is not a full replacement of or a functional equivalent to Article III judicial review.

Moreover, the negotiation history of the CFTA is highly illustrative of Canada and the United States' intent in establishing binational panel review for AD/CVD cases. When President Ronald Reagan and Prime Minister Brian Mulroney met in March of 1985 to negotiate, they committed to liberalizing trade between Canada and the United States and

fighting protectionism.  Donald S. Macdonald, Rep. of the Royal Comm'n on the Economic

Union and Development Prospects for Canada at 376—77 (1985) (hereinafter the "Macdonald

Report").  During subsequent negotiations, Canada initially pushed for *full exemption* from

U.S. AD/CVD laws because of concerns that these laws give "American business interests

broad scope to harass their foreign competitors and thus deter investment." *Id.* at 285; *see also*

Susan A. Maxson, *The Binational Dispute-Resolution Panel Created by the United States-

Canada Free Trade Agreement: What Did Canada Win?*, 1990 U. Chi. L. Rev. 653, 662

(1990) (hereinafter "Maxson").

When that proposal failed, Canada then sought the creation of a binational panel review

system, but not to replace the Court of International Trade.  Rather, Canada wanted these

panels to replace the International Trade Association ("ITA") and the International Trade

Commission ("ITC") because of their "questionable investigative practices" and their

superficial and hasty information gathering.  Alan R. Rugman, *A Canadian Perspective on

U.S. Administered Protection and the Free Trade Agreement*, 40 Me L Rev 305, 321 (1988);

*see* Alan M. Rugman and Andrew D.M. Anderson, *Administered Protection in America* 13-14

(Croom Helm, 1987).[1]  Clearly, the original purpose of binational panel review was thus to aid

importers of Canadian goods in challenges to arbitrary and capricious agency investigations

and to shield Canadian producers from harassment by U.S. producers. Ultimately, Canada

compromised with the United States when binational panel review was substituted for judicial

review rather than for the investigation procedures of the ITC and ITA.  *See Maxson* at 663—

64; Robert Howse, *Developments in USMCA dispute settlement*, Brookings (Mar. 6, 2024),

---

[1] Dr. Alan Rugman "served as an outside advisor on free trade, foreign investment and international competitiveness to two Canadian Prime Ministers over the 1986-1993 period."  *AIB Fellow – Alan M. Rugman*, Academy of International Business (June 2009), https://aib.msu.edu/fellow/50/Alan-M-Rugman.

https://www.brookings.edu/articles/developments-in-usmca-dispute-settlement/.

During negotiations over the USMCA in 2018, binational panel review once again became a topic of debate.  The United States attempted to remove Chapter 19 of NAFTA, which provides for binational panel review as it was under the CFTA, from the agreement during negotiations, but "Canada and Mexico expressed support for retaining the mechanism, with Canada drawing a 'red line' firmly opposing its elimination."  M. Angeles Villarreal, Cong. Rsch. Serv., R44981, *The United States-Mexico-Canda Agreement* 26 (2024).  Panel review was ultimately maintained in Chapter 10 of the USMCA and was codified by the USMCA Implementing Act.  USMCA Art. 10.12; 19 U.S.C. § 4501; United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-113, tit. IV, 134 Stat. 11, 61-66 (2020) (hereinafter "USMCA Implementation Act").

## II.  PIPE & PILING'S HARMLESS FILING ERROR AND GOOD FAITH EFFORTS TO COMPLY WITH PROCEDURE

Pipe & Piling filed a Summons on November 17, 2024, and filed a complaint on December 17, 2024, challenging the October 31, 2024, final results of the Department of Commerce's administrative review of the anti-dumping order on large diameter welded pipe from Canada.  Compl., ECF No. 9.  In the complaint, Plaintiff alleges that despite its good faith efforts to reply to the Government's questionnaire and supplemental requests, the Government rejected all of Pipe & Piling's submitted information and applied total "adverse facts available" ("AFA") without giving any notice of its intent to do so over the three month period between Plaintiff's submissions and the publication of the Preliminary Results on May 21, 2024. *See generally* Compl.  As justification for applying a punitive dumping margin of 50.89 percent, Commerce claimed that Pipe & Piling failed to provide a "clear and consistent narrative" and pointed to Pipe & Piling's good faith efforts to revise information for accuracy

as part of the problem because those revisions were not directed by Commerce.  Compl. at 9.

On June 20, 2024, Pipe & Piling filed a case brief addressing the Government's concerns and

reasserting that it cooperated to the best of its ability, but Commerce ultimately disagreed.  *Id.*

at 9–10.

The Government and Proposed Defendant Intervenor now argue that Plaintiff's

complaint should be dismissed entirely and that all equitable relief should be denied because it

failed to comply with the notice requirements of the Special Rule by (a) not providing notice

of its intent to seek judicial review within 20 days of the *Final Results*, and (b) filing its

complaint earlier than 31 days after the *Final Results*.  Mot. to Dismiss, ECF No. 24; Mot. in

Supp. of Mot. to Dismiss, ECF No. 25.  Importantly, no other parties filed a request for a

binational panel review, and Plaintiff's right to judicial review should not be overridden

because of a harmless error of this nature which Plaintiff otherwise diligently pursued.  *Id.*

Pipe & Piling tried in good faith to comply with both the investigation and with the procedural

rules of this Court, but by mistakenly filing 27 days after publication of the *Final Results*, it

now faces potential forfeiture not just of judicial review, but of any review at all regardless of

the merits of its case or the circumstances of its harmless error.

## ARGUMENT

### I.    Jurisdiction and Standard of Review

This case requires the Court to answer three distinct questions: (1) whether the CIT has

jurisdiction under 19 U.S.C. § 1516a(g)(4) to determine if equitable tolling is available under the

Special Rule; (2) if so, whether equitable tolling is expressly or presumptively allowed under the

statute; and (3) if it is, whether the merits of Pipe & Piling's case warrant the application of

equitable tolling.

While the plaintiff bears the burden of establishing subject-matter jurisdiction, *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011), this Court assumes the facts alleged in the complaint relevant to the jurisdictional inquiry to be true. *Pixton v. B & B Plastics, In*c., 291 F.3d 1324, 1326 (Fed. Cir. 2002), *appeal after remand*, 143 Fed. Appx. 365 (Fed. Cir. 2005). This Court need only find that a "preponderance of the evidence" supports a finding of jurisdiction, *Canadian Wheat Bd. v. United States*, 580 F. Supp. 2d 1350, 1356 (Ct. Int'l Trade 2008), *judgment aff'd*, 641 F. 3d 1344 (Fed. Cir. 2011), and must also draw all reasonable inferences in the plaintiff's favor, *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314-15(Fed. Cir. 2006). The CIT has jurisdiction to review challenges to AD/CVD determinations involving non-FTA country merchandise under 19 U.S.C. § 1516a(a) and 28 U.S.C. § 1581(c). In those cases, the standard of review provides that the CIT must hold unlawful any administrative determination that is "unsupported by substantial evidence on the record as a whole, or is otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Equitable tolling is available in cases involving non-FTA countries where "the interests in fairness and accuracy outweigh the burden upon Commerce." *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1367 (Ct. Int'l Trade 2012), *opinion after remand*, 36 C.I.T. 1092 (2012). For cases involving FTA-member countries, this Court has jurisdiction under 19 U.S.C. § 1516a(g) to review AD/CVD determinations where no panel has been requested and notice of intent to seek judicial review has been timely provided, or with respect to a determination solely concerning a constitutional issue other than the constitutionality of the Implementing Act itself. 19 U.S.C. §§ 1516a(g)(3)(A)(i), (3)(B), (4). When deciding a question that implicates the constitutionality of a statutory provision like the Special Rule, this Court is

obligated to interpret statutory law to avoid a constitutional conflict where "fairly possible." *Crowell v. Benson*, 285 U.S. 22, 62 (1932).

As argued below, this Court should refer the threshold question of whether the CIT has jurisdiction to determine if equitable relief is available to a three-judge panel as required under 19 U.S.C. § 1516a(g)(4) because it raises constitutional questions that implicate Article II, Article III, and the Due Process Clause of the Fifth Amendment. After holding on that threshold issue and assuming that jurisdiction is found to exist, this Court should find that both Congress and the Parties to the USMCA clearly intended for the availability of equitable tolling under the Special Rule. Finally, this Court should hold that the circumstances of Pipe & Piling's good faith error warrant the application of equitable tolling in the interests of fairness and accuracy, and that those interests outweigh any burden on the Government in this case.

## II.    The Availability of Equitable Tolling is a Constitutional Question Over Which This Court Expressly Has Jurisdiction Under the Special Rule, But Which Must Be Referred to a 3-Judge Panel

The Government argues that a party's failure to provide timely notice of intent to commence judicial review "under the Special Rule outlined in 19 U.S.C. § 1516a(g)(3)(B) divests the Court of subject matter jurisdiction." Mot. to Dismiss at 13. As support, the Government directs the Court's attention to two cases that it argues have bindingly held as such. *See Bhullar v. United States*, 27 C.I.T. 532, 543 (2003), *aff'd*, 93 F. App'x 218 (Fed. Cir. 2004); *American Cast Iron Pipe Co. v. United States*, 405 F. Supp. 3d 1378, 1382-83 (Ct. Int'l Trade 2019). The Government and these cases both frame this issue as one of pure statutory interpretation, but fail to acknowledge that both the availability of judicial review and of equitable tolling are also constitutional questions that implicate Article I, Article II, Article III, and the Due Process Clause of the Fifth Amendment. Under both the express terms of the

USMCA Implementing Act and long-standing Supreme Court precedent, these prior rulings hold

no precedential weight and should be disregarded by this Court.

As required under the constitutional exception to the Special Rule, "An action for review

under this subparagraph shall be assigned to a 3-judge panel of the United States Court of

International Trade." 19 U.S.C. § 1516a(g)(4)(B). Because the availability of judicial review

and of equitable tolling raised by the Government implicate constitutional questions, this Court

should refer these issues to such a panel for a holding before the rest of the arguments presented

in the Government's Motion and this response are reviewed.

### 1.    The Scope of Judicial Review and Equitable Relief under the Special Rule Are Not Just Statutory, But Constitutional Questions that Implicate Separation of Powers

The availability of judicial review is a threshold question to any case or controversy

brought against the United States, and it a question that is fundamentally judicial in nature. *See*

*Marbury v. Madison*, 5 U.S. 137, 167 (1803). This question of subject matter jurisdiction is a

necessary condition of Article III powers because, as stated by the Supreme Court, "[t]he

statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of

separation and equilibration of powers, restraining the courts from acting at certain times, and

even restraining them from acting permanently regarding certain subjects." *Steel Co. v. Citizens*

*for a Better Env't*, 523 U.S. 83, 101 (1998). Under Article I of the Constitution, Congress

ultimately controls the scope of inferior federal court jurisdiction, but that power is still limited

by the powers of the Executive under Article II and of the Judiciary under Article III. Art. I, § 8,

Cl. 9; *see Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015) (hereinafter "Zivotofsky II"); *Webster v.*

*Doe*, 486 U.S. 592, 603 (1988). This Court must at a minimum have the power to decide

whether jurisdiction exists, because to hold otherwise would raise "serious constitutional

questions" as to whether the Special Rule violates the Constitution itself by "deny[ing] any judicial forum for a colorable constitutional claim." *Webster*, 486 U.S. at 603.

Under the interpretation of the Special Rule urged by the Government and Defendant-Intervenor, a failure to provide timely notice strips both this Court and the binational panel review system of any jurisdiction whatsoever to review a claim. *See generally* Mot. to Dismiss; Mot. in Supp. of Mot. to Dismiss. Via one single procedural error, no matter the circumstances, a plaintiff like Pipe & Piling could not seek equitable relief from any forum despite the intent behind the USMCA to provide such plaintiffs greater opportunities for theoretically less U.S.-biased review of arbitrary agency decisions that disproportionately favor domestic U.S. producers. *See supra* Statement of Facts, Section 1. Such a result would not only be counter to the purpose of binational panel review, but also raises serious questions regarding the availability of judicial review.

At a minimum, the Government is wrong because this Court has express jurisdiction under 19 U.S.C. § 1516a(g)(4)(B) to consider constitutional questions like whether equitable relief is available. Contrary to the Government's assertions that binational panel review is the "default" or "exclusive" mode of review for AD/CVD cases, a plain text reading of the USMCA Implementation Act and the Tariff Act of 1930 clearly supports judicial review as the default and binational panel review as an additional alternative to which one must opt in. *See* Mot. to Dismiss. The USMCA Implementation Act and the Special Rule use only permissive language in reference to panel review, and provide that parties must proactively opt in to this forum. 19 U.S.C. § 4584, which covers dispute resolution for AD/CVD cases, states that one "*may*" request panel review, and the Special Rule provides that "*if*" panel review of a determination is requested then review is not available.

This reading is further supported by an exception to the Special Rule in paragraph (3), which clearly states that a "determination is reviewable under subsection (a) if the determination sought to be reviewed is a determination as to which neither the United States nor the relevant FTA country requested review by a binational panel." 19 U.S.C. § 1516a(g)(3). The USMCA similarly provides that, "This Article shall not apply where: (a) neither involved Party seeks panel review of a final determination." Art. 10.12(10). U.S. courts are also not bound by any binational panel decision in other AD/CVD proceedings because those decisions are not actually a functional substitute for real judicial review. 19 U.S.C. § 1516a(b)(3). This permissive language and lack of binding power reaffirms that the decision as to whether equitable relief is available must be judicial in nature.

Moreover, the interpretation urged by the government is highly disfavored. Congress "has broad powers over the jurisdiction of the federal courts and over the sovereign immunity of the United States," but in suits against the United States, there is a rebuttable presumption that equitable tolling applies to statutory timing rules to the same extent as in private suits, including "situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990). That presumption can only be rebutted "if 'there [is] good reason to believe that Congress did not want the equitable tolling doctrine to apply.'" *Arellano v. McDonough*, 598 U.S. 1, 7 (2023) (quoting *United States v. Brockamp*, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997)). To determine whether Congress intended for a procedural requirement to be jurisdictional, a court must use the traditional tools of statutory construction and assess whether Congress "clearly states" that the rule is jurisdictional. *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203–04 (2022). Generally, "these [traditional] tools include

consideration of a procedural rule's text, context, and historical treatment." *Icdas Celik Enerji Tersane v. Ulasim Sanayi, A.S.*, 106 F. Supp. 3d 1328, 1334 (Ct. Int'l Trade 2015). In addition, analysis should be oriented to the fact that "jurisdictional rules pertain to 'the power of the court rather than to the rights or obligations of the parties.'" *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 298 (2023) (internal quotation marks omitted).

A procedural rule is a jurisdictional limit on statutorily conferred power "only if Congress 'clearly states' that it is." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416-17 (2023) (quoting *Boechler, P.C. v. Commissioner*, 596 U.S. 199, 203 (2022)). The jurisdiction of federal courts, including the CIT, extends to "all suits…in equity," and the Supreme Court has "long held that '[t]he "jurisdiction" thus conferred … is an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries.'" Art. III, § 2; § 11, 1 Stat. 78 (1789); *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). This historically-grounded and well-established constitutional power of judicial review presumptively includes the power to equitably toll, and as such the Supreme Court has consistently held that "time prescriptions, however emphatic, 'are not properly typed 'jurisdictional.'" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006). This caution exists "[b]ecause the consequences that attach to the jurisdictional label may be so drastic," and thus, "[a]mong the types of rules that should not be described as jurisdictional are what we have called 'claim-processing rules.' These are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

The Special Rule is precisely that—a "claim-processing" rule designed to promote the orderly progress of litigation—not a total jurisdictional bar. The only portion of the Special Rule that uses the term "jurisdiction" is 19 U.S.C. § 1516a which states that "*if*" a binational panel is requested, "then, except as provided in paragraphs (3) and (4) … no court of the United States has power or jurisdiction to review the determination on any question of law or fact[.]" 19 U.S.C. § 1516a(g)(2). Paragraph (3) provides the exception for judicial review where no panel has been requested by the United States or the relevant FTA country, and states that a determination is only "reviewable" under that exception if timely notice has been provided of intent to commence judicial review. 19 U.S.C. § 1516a(g)(3)(B). Paragraph (4), at stated earlier, provides that review is available for constitutional questions. 19 U.S.C. § 1516a(g)(4). This convoluted statutory scheme with carve-outs for judicial review is hardly a "clear" enough statement to pass the high bar that the notice requirements of the Special Rule are jurisdictional.

This case is unlike those where the Supreme Court has found a procedural rule to be jurisdictional. In those cases, the Supreme Court has explained that,

> In *Brockamp*, we interpreted a statute of limitations that was silent on the question of equitable tolling as foreclosing application of that doctrine. But in doing so we emphasized that the statute at issue (1) "se[t] forth its time limitations in unusually emphatic form"; (2) used "highly detailed" and "technical" language "that, linguistically speaking, cannot easily be read as containing implicit exceptions"; (3) "reiterate[d] its limitations several times in several different ways"; (4) related to an "underlying subject matter," nationwide tax collection, with respect to which the practical consequences of permitting tolling would have been substantial; and (5) would, if tolled, "require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery—a kind of tolling for which we ... found no direct precedent." *United States v. Brockamp*, 519 U.S. 347, 350–352, (1997). And in *Beggerly* we held that *Irwin*'s presumption was overcome where (1) the 12–year statute of limitations at issue was "unusually generous" and (2) the underlying claim "deal[t] with ownership of land" and thereby implicated landowners' need to "know with certainty what their rights are, and the period during which those rights may be subject to challenge." *U.S. v. Beggerly*, 524 U.S. 38, 48–49 (1998).

14

*Holland v. Fla.*, 560 U.S. 631, 646–47 (2010).  The USMCA Implementing Statute as integrated with the Tariff Act of 1930 breaks the provisions of the Special Rule into multiple sections, contains a large amount of language that could be interpreted as containing implicit and explicit exceptions, does not repeat or use overly emphatic language regarding jurisdiction, the tolling would require no substantive limitations on amount of recovery, and the timing limitations are so narrow that they could never be called "unusually generous."

Furthermore, the USMCA expressly contemplates the availability of equitable tolling and the preservation of typical judicial procedures, including the applicability of equitable relief.  In its provisions on binational panel review, the USMCA directs the Parties to "adopt or maintain rules of procedure based, where appropriate, on judicial rules of appellate procedure, and shall include rules concerning: … computation and extensions of time."  USMCA, Art. 10.12(14). Meanwhile, the Implementing Act provides that, ""No provision of the USMCA, nor the application of any such provision to any person or circumstance, which is inconsistent with any law of the United States, shall have effect."  19 U.S.C. § 4512(a)(1).  The binational panel review system is largely unchanged from when it was first established under the CFTA in the late 1980s.  *See supra* Statement of Facts, Sec. I.  At that time, it was already well understood that where no powers reserved to the States are implicated, Art. III courts are free to use their equitable powers to create federal common law "as a 'necessary expedient' when Congress has not 'spoken to a *particular* issue.'"  *Oneida Cnty., New York v. Oneida Indian Nation of New York State*, 470 U.S. 226, 236–37 (1985).  Given that the USMCA expressly contemplates "extensions of time" and Congress has been otherwise silent on the availability of equitable tolling under the Special Rule despite the Government's urged interpretation here, this Court is

therefore entitled "to fashion [a] uniform federal common law on [this] issue[] of national concern." *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006).

> **2.    The Government's Interpretation of the Special Rule Would Create a Constitutional Conflict Between the USMCA and Its Implementing Statute**

The threshold question of subject matter jurisdiction and equitable relief under the Special Rule also implicates the powers of the Executive under Article II because, although the Import-Export Clause is under Article I, the USMCA is a treaty created pursuant to Article II, Section 2, Clause 2.  Art. I, § 10, Cl. 2; Art. II, § 2, Cl. 2.  As a non-self-executing treaty, the USMCA binds the United States as a matter of international law, but does not create rights or obligations enforceable as domestic law in U.S. courts without its implementing statute.  *See Medellín v. Texas*, 552 U.S. 491, 505.  However, both Executive and Congressional intent must be taken into account when determining which controls and this raises serious constitutional separation of powers questions that would also fall under the purview of the Special Rule.  *See* 19 U.S.C. § 1516a(g)(4).  Per the Supreme Court, "[w]hile courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight.  *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961).

The interpretation of the Special Rule urged by the Government would conflict with the intent behind the USMCA as a "contract between two nations."  *See Foster v. Neilson*, 27 U.S. 253, 254 (1829), *overruled on other grounds by United States v. Percheman*, 32 U.S. 51 (1833).  The purpose of binational panel review under the USMCA is to protect Canadian producers and exporters from harassment by U.S. domestic producers and to limit the protectionist nature of U.S. trade law that harms importers like Pipe & Piling via arbitrary agency actions.  As

explained in the Statement of Facts, the original intent behind binational panel review was to replace not the CIT, but the ITA and the ITC because of their "questionable investigative practices" and their superficial and hasty information gathering. *See* Alan R. Rugman, *A Canadian Perspective on U.S. Administered Protection and the Free Trade Agreement*, 40 Me L Rev 305, 321 (1988); Alan M. Rugman and Andrew D.M. Anderson, *Administered Protection in America* 13-14 (Croom Helm, 1987). If this Court were to follow the interpretation urged by the Government, it would achieve the opposite effect: preventing any review whatsoever of an otherwise meritorious claim to protect an arbitrary agency decision and at the urging of domestic producers to the detriment of importers from USMCA-nations.

> **3.    Denying Equitable Relief to FTA-Member Countries But Allowing it For Non-FTA Member Countries Would Violate the Due Process Clause of the Fifth Amendment**

The Government's interpretation of the Special Rule would also implicate procedural due process under the Fifth Amendment. U.S. Const. amend. V. If the Special Rule's timing requirements are jurisdictional, in contradiction to the Supreme Court's repeated rulings on the presumption against procedural "claims-processing" rules as such, then as interpreted by the Government it would strip all potential for any kind of review whatsoever after a single procedural error—no matter the cause or circumstances. This would violate the Due Process Clause by wholesale stripping plaintiffs like Pipe & Piling of their bare minimum right to a meaningful opportunity to be heard. This Court has no obligation to yet hear the merits of Plaintiff's case, but to hold that this Court lacks jurisdiction to even consider whether equitable tolling is available on a case-by-case basis goes too far.

Nor was that the intent of Congress or the Parties to the USMCA. The CIT has previously held that equitable relief is available in non-USMCA AD/CVD proceedings and that

Congress intended for importers to have broad standing in the CIT, and the USMCA's binational panel review provisions were meant to further benefit importers of Canadian goods. *Grobest*, 36 Ct. Int'l Trade at 125; *Gov't of Canada v. United States*, 686 F. Supp. 3d 1320, 1332-33 (Ct. Int'l Trade 2024) (quoting S. Rep. No. 96-249, at 636 (1979) (explaining that Congress gave this Court a broad jurisdictional grant under section 1516a to "'greatly expand the right of interested parties to appear and be heard in litigation concerning antidumping and countervailing duties,'" specifically naming "'importer[s] [who] participated in the administrative proceedings'" as a group who should enjoy this right.)). Congress expressly provided for the availability of equitable relief in AD/CVD cases when it established that the CIT is an Article III court. 28 U.S.C. § 1585; the Customs Court Act of 1980, Pub. L. No. 96–417, 94 Stat. 1727. The USMCA and its Implementing Act also expressly state that the treaty is not intended to be inconsistent with any law of the United States, and direct the Parties to "adopt or maintain rules of procedure based, where appropriate, on judicial rules of appellate procedure, and shall include rules concerning: … computation and extensions of time." 19 U.S.C. § 4512(a)(1); USMCA, Art. 10.12(14). How then, could the Government now argue that in implementing the USMCA, Congress intended to provide *less* process to plaintiffs like Pipe & Piling merely because they import from a free trade nation?

For importers from non-USMCA countries, this Court has also held that under the abuse of discretion standard for agency actions, despite the Government's "necessary discretion to set and enforce its deadlines, the court will review on a case-by-case basis whether the interests of accuracy and fairness outweigh the burden placed on the [Government] and the interest in finality." *Grobest*, 36 Ct. Int'l Trade at 123. Under those same principles, it would be counter

intuitive to give less process to importers from USMCA member countries who were meant to be given *more* protection from arbitrary agency decisions.

The existence of binational panel review should therefore not be interpreted to exclude all equitable relief, because that would deprive plaintiffs in AD/CVD cases involving USMCA-member countries from the very bare minimum right to be heard. Without the CIT possessing at least limited jurisdiction to determine on a case-by-case basis whether equitable tolling is warranted in the interests of fairness and accuracy, Plaintiffs like Pipe & Piling would be forced to forfeit all judicial review whatsoever, even if their mistake was caused by the deception or fraud of another party, or by an act of God or nature completely outside their control.

> ### 4. Prior Holdings on the Availability of Judicial Review and Equitable Tolling Are Not Binding and Hold no Precedential Weight

Finally, the Government's arguments on existing case law are unavailing because those cases are either inapplicable or hold no precedential weight. This is true for two reasons: (1) as argued above, those Courts did not have the power under 19 U.S.C. § 1516a(g)(4) to decide the constitutional question of whether judicial review is available and whether equitable tolling may be applied under the Special Rule where no panel has been requested; and (2) the only case that actually addresses this question did so in such a cursory manner as to constitute a mere "drive-by" jurisdictional ruling without precedential weight. Under 19 U.S.C. § 1516a(g)(4), only a 3-judge panel of the CIT can decide constitutional issues like whether judicial review or equitable tolling are available.

First, *Bhullar* is inapplicable to this case because it involved an AD/CVD proceeding in which a binational panel had already been requested. *Bhullar*, 259 F. Supp. 2d 1332, 1335 (Ct. Int'l Trade 2003). *Bhullar* is thus neither binding nor remotely relevant to the dispute at issue

here where no panel has been requested and the facts are such that Canada has not and will not request panel review.

Second, *American Cast Iron* is also inapplicable because although it involves a similar scenario where no panel was requested, it was decided by only a single judge and the holding is so cursory as to hold no precedential weight.  In *American Cast Iron Pipe Co. v. United States*, this Court held for the first time that even where no binational panel review was requested, untimely notice of intent to commence judicial review strips this Court entirely of subject matter jurisdiction.  405 F. Supp. 3d 1378, 1383-84 (Ct. Int'l Trade 2019).  In so holding, the opinion emphasized the language of the Special Rule that states that a determination is reviewable under the exception for judicial review of cases where no panel has been requested "only if" timely notice is provided.  *Id*. at 1382; 19 U.S.C. § 1516a(g)(3)(B).  However, the opinion contains no discussion of whether limited subject matter jurisdiction is available to determine whether equitable relief is applicable, whether the availability of judicial review implicates any constitutional questions, or whether such an interpretation potentially violates separation of powers principles. As such, under Supreme Court precedent, "'drive-by jurisdictional rulings'— asserting or denying jurisdiction 'without elaboration,' or analysis of whether anything 'turn[ed] on' the ruling—should be accorded 'no precedential effect.'"  *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. at 42.  Had the American Cast Iron Pipe court considered the issue further, it may have reached a different result.  But it did not, and this Court should give no weight to its holding.

## III.    The Specific Facts and Context of This Case Merit the Application of Equitable Tolling

As argued above, equitable tolling is compatible with the Special Rule and this Court must retain some amount of Article III jurisdiction to determine on a case-by-case basis whether

equitable relief is available to an importer of Canadian goods who has made a single procedural error that could otherwise forfeit all review entirely. Assuming this Court refers the constitutional issues raised here to a 3-judge panel and that panel finds that jurisdiction is available and that equitable tolling applies to the Special Rule, the most appropriate way to grant such relief would be to toll the notice provisions of the Special Rule such that other parties could have an opportunity to request a binational panel and, if no panel is requested, Pipe & Piling could then re-file its complaint for judicial review and its request for injunctive relief in the interim.

The specific facts and context of this case merit such an application, and the burden to the Government of equitable tolling is negligible in comparison to the immense harm Pipe & Piling. First, Pipe & Piling is a domestic importer of Canadian goods—precisely the kind of plaintiff Canada sought to aid with binational panel review and that Congress broadened the CIT's jurisdiction to support. *See generally Maxson Article*; *Macdonald Report*. Second, Pipe & Piling filed its complaint to challenge precisely the kind of "questionable investigative practices" that Canada hoped to reduce via the USMCA. Rugman, *A Canadian Perspective on U.S. Administered Protection and the Free Trade Agreement*, 40 Me L Rev 305, 321 (1988). Third, Commerce not only arbitrarily applied the AFA rate to Plaintiff, but also failed for several months to comply with the notice and remedial requirements of 19 U.S.C. § 1677m(d). *See Compl.* Fourth, the Government of Canada has no interest in this antidumping case and as such has not and will not request a panel even if the statute is tolled. *See id.* And finally, the burden to the Government of equitable tolling would be extremely minimal as in this case it would simply require the Government to litigate a meritorious case that it certainly would have had to if Pipe & Piling had filed notice only one week earlier. In contrast, Pipe & Piling is facing a rate of

50.89% after providing over 1,500 pages of documents and 170 worksheets to the Government. *See* Mot. for Statutory Inj.

This Court should therefore find that the interests of fairness and accuracy outweigh any burden on the Government. Pipe & Piling diligently tried to pursue its judicial remedies but in good faith filed a defective pleading after Commerce failed to meet its own notice obligations for several months and then imposed an unreasonable and arbitrary rate as a result. The application of equitable tolling under these circumstances would not only be just, but would also better represent the intent of the USMCA and its Implementing Statute than the draconian interpretation urged by the Government and Defendant-Intervenor.

## **CONCLUSION**

This Court clearly retains its Article III power of judicial review to determine on a case-by-case basis whether equitable tolling applies where no binational panel review has been requested. At a minimum, this Court must retain its jurisdiction to decide whether the interests of fairness and accuracy require the application of equitable relief to a specific case. Anything less would be contrary to Congressional intent, and to Article III and the Due Process Clause of the Constitution.

Thus, to comply with 19 U.S.C. § 1516a(g)(4)(B), this Court should refer the issue to a 3-judge panel to render such a determination on the constitutional issues raised by the Government and in this response. If after such a holding this Court finds that Plainitff's complaint warrants a hearing on the merits despite Plaintiff's good faith procedural filing error, then it should hold that equitable tolling applies such that all parties are given an appropriate amount of time to request a panel and, if none is requested, that Plaintiff may refile for judicial review.

Respectfully submitted,

_/s/ Alexander H. Schaefer_
Alexander H. Schaefer
Pierce Lee
Weronika Bukowski

Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 624-2773
aschaefer@crowell.com

_Counsel for Pipe & Piling Supplies_

April 28, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to U.S. Court of International Trade Rule 2(b) of the Court's Standard

Chambers Procedures, undersigned counsel for Plaintiff certifies this brief contains 6,959 words.

This brief also complies with all typeface and margin requirements.

*/s/ Alexander H. Schaefer*
Alexander H. Schaefer
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2773
aschaefer@Crowell.com
*Counsel for Pipe & Piling Supplies*

Dated: April 28, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Pipe & Piling Supplies,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES,<br><br>　　　　　　　　Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

　　　　　　　　Court No. 24-00211

## **{Proposed} Order**

Upon consideration of Government's Motion to Dismiss and Response in Opposition to Plaintiff's Motion for a Statutory Injunction (Mar. 20, 2025), ECF No. 24; Proposed Defendant-Intervenor/Amicus Curiae's Brief in Support of Defendant's Motion to Dismiss (Mar. 27, 2025), ECF No. 25; Plaintiff's response to the Government's Motion to Dismiss; and all other papers and proceedings in this action, it is hereby

ORDERED that the government's motion is denied; and it is further

ORDERED that Plaintiff's Motion for A Statutory Injunction is granted; and it is further

ORDERED that this matter shall be referred to a three-judge panel.


　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　　　　　　Judge


Dated: _____, 2025
　　　　New York, New York