Slip Op. 25-119

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PIPE & PILING SUPPLIES, <br><br>  Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br>  Defendant, <br><br> and <br><br> AMERICAN LINE PIPE PRODUCERS ASSOCIATION TRADE COMMITTEE, <br><br>  Defendant-Intervenor. | Before: Jane A. Restani, Judge <br><br> Court No. 24-00211 |

## OPINION

[The court dismisses the case for lack of subject matter jurisdiction.]

Dated: September 8, 2025

Alexander Hume Schaefer, Crowell & Moring, LLP, of Washington, DC, for plaintiff Pipe & Piling Supplies. With him on the brief were Meaghan Allyssa Katz, Pierce Jungwoon Lee, and Weronika Bukowski.

Isabelle Aubrun, U.S. Department of Justice, of Washington, DC, for the defendant. Of counsel on the brief was Fee Pauwels, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Timothy C. Brightbill, Wiley Rein, LLP, of Washington, DC, for defendant-intervenor American Line Pipe Producers Association Trade Committee. With him on the brief were Elizabeth Seungyon Lee, Laura El-Sabaawi, Paul J. Coyle, and Paul A. Devamithran.

     Restani, Judge: This action arose as a challenge to the final determination made by the United States Department of Commerce ("Commerce") in the antidumping duty order review of large diameter welded pipe from Canada covering the period of 2022–23. The United States ("the

government") requests that the court dismiss Pipe & Piling Supplies' ("Pipe & Piling") action for lack of subject matter jurisdiction due to Pipe & Piling's failure to follow the procedure mandated by the United States-Mexico-Canada Agreement ("USMCA"), implemented in 19 U.S.C. § 1516a.

## BACKGROUND

On October 31, 2024, Commerce issued the final results of its administrative review of antidumping duties on large diameter welded pipe from Canada, <u>Large Diameter Welded Pipe From Canada: Final Results of Antidumping Duty Administrative Review; 2022-2023</u>, 89 Fed. Reg. 86,787 (Dep't Commerce Oct. 31, 2024) ("<u>Final Results</u>") along with the accompanying <u>Issues and Decision Memorandum for the Final Results of the 2022-2023 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Pipe from Canada</u>, A-122-863, POR 5/1/2022-4/30/2023 (Dep't Commerce Oct. 25, 2024) ("<u>IDM</u>"). Commerce calculated the antidumping duty rate for Pipe & Piling to be 50.89 percent.[1] See Confidential Compl. ¶ 32, ECF No. 9 (Dec. 27, 2024) ("Compl."); <u>IDM</u> at 13. On November 27, 2024, Pipe & Piling commenced this action to challenge Commerce's final determination, 27 days after the publication of the <u>Final Results</u>. See Summons, ECF No. 1 (Nov. 27, 2024). Pipe & Piling did not notify the other interested parties before it did so. As a result, Pipe & Piling failed to follow the proper procedures under the USMCA, codified in 19 U.S.C. § 1516a(g)(3)(B), which require it to notify, within 20 days, other interested parties of its intent to seek judicial review of Commerce's <u>Final Results</u>. 19 U.S.C. § 1516a(g)(3)(B). The question in this case is whether that failure strips the court of jurisdiction to hear Pipe & Piling's case.

---

[1] Commerce arrived at this rate by applying total facts available with an adverse inference to Pipe & Piling's information. <u>IDM</u> at 12. Pipe & Piling challenges that decision, but because the court decides that this case must be dismissed for lack of subject matter jurisdiction, it need not decide the merits of Pipe & Piling's claim. Confidential Compl. ¶ 36, ECF No. 9 (Dec. 27, 2024) ("Compl.").

## DISCUSSION

I.    **The Requirements of Section 1516a(g)(3)(B) are Jurisdictional**

The government argues that the court lacks subject matter jurisdiction to consider Pipe & Piling's claims. Def.'s Corrected Mot. to Dismiss at 7, ECF No. 24 (Mar. 20, 2025) ("Def.'s Mot."). The government contends that section 1516a(g)(3)(B)'s requirement that a party provide notice of its intent to seek judicial review within 20 days of the final determination is jurisdictional. Id. The government argues that because Pipe & Piling failed to do so, the court does not have subject matter jurisdiction over the case.[2] Id. Pipe & Piling responds that the notice requirement is merely a non-jurisdictional procedural provision that seeks to promote the orderly progress of litigation.[3] Pl.'s Resp. to Def.'s Mot. to Dismiss at 13–14, ECF No. 27 (Apr. 29, 2025) ("Pl.'s

---

[2] The government contends in the alternative that section 1516a(g)(3)(B)'s 20-day notice limit is a deadline that cannot be equitably tolled or extended. Def.'s Mot. at 13–17. The government adds that, even if the deadline could be tolled or extended, Pipe & Piling is not deserving of any such tolling or extension. Def.'s Reply at 9–10, ECF No. 29 (May 19, 2025). Pipe & Piling replies that the court should toll the notice requirement's 20-day deadline because this is a harmless error and the USMCA did not intend for the error to carry such severe consequences. See Pl.'s Resp. to Def.'s Mot. to Dismiss at 20–22, ECF No. 27 (Apr. 29, 2025) ("Pl.'s Resp."). Assuming arguendo that section 1516a(g)(3)(B) is not jurisdictional, practical considerations suggest that section 1516a(g)(3)(B) does not allow equitable tolling. Equitable tolling could result in a party bringing a case after the time period to request a binational panel has run. Equitable tolling, therefore, would be inconsistent with the statutory scheme which seeks to ensure that USMCA members make a fully informed decision to forgo binational panel review before domestic judicial review is available to private parties such as Pipe & Piling. See USMCA art. 10.12(15)(c)(ii). Further, assuming arguendo that equitable tolling were available, Pipe & Piling is undeserving of its benefit. Equitable tolling exists to benefit litigants who have pursued their rights diligently but have been prevented from meeting a deadline by an extraordinary circumstance. Arellano v. McDonough, 598 U.S. 1, 6 (2023) (quoting Lozano v. Montoya Alvarez, 572 U.S. 1, 10 (2014)). Pipe & Piling does not claim that any such circumstance occurred here. Pl.'s Resp. at 20–22. Instead, it seems that Pipe & Piling simply did not read the statute carefully enough.

[3] Pipe & Piling also contends that the question of jurisdiction must be referred to a mandatory three-judge panel because it raises constitutional issues. Pl.'s Resp. at 9–10. The court is unconvinced that plaintiff has raised a challenge that requires a three-judge panel under 19 U.S.C. § 1516a(g)(4)(B). Section 1516a(g)(4)(B) creates a mandatory three-judge panel for constitutional challenges to the determination itself. See 19 U.S.C. § 1516a(g)(4)(B) ("Review is available . . . with respect to a determination solely concerning a constitutional issue."). Pipe & Piling has not

Resp.").

Jurisdictional rules "mark the bounds of a 'court's adjudicatory authority.'" Boechler, P.C. v. Comm'r, 596 U.S. 199, 203 (2022) (quoting Kontrick v. Ryan, 540 U.S. 443, 455 (2004)). A party's failure to obey a jurisdictional rule carries with it severe consequences. MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288, 297 (2023). "An unmet jurisdictional precondition deprives courts of power to hear the case, thus requiring immediate dismissal," id., because "courts are not able to exceed limits on their adjudicative authority" in any circumstance. Santos-Zacaria v. Garland, 598 U.S. 411, 416 (2023). A court, therefore, cannot excuse a party's failure to follow a jurisdictional rule under an equitable exception. Id.

Even though Congress often enacts procedural rules "as categorical commands," those commands "are only occasionally as strict as they seem." Harrow v. Dep't of Def., 601 U.S. 480, 483 (2024). Courts often read these provisions as non-jurisdictional procedural rules that merely "seek to promote the orderly progress of litigation." Santos-Zacaria, 598 U.S. at 416 (quoting Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011)). In most cases, the statute must clearly state that a procedural rule is jurisdictional before it will be treated as such. See

---

raised a constitutional challenge to the underlying determination. See generally Pl.'s Mot. for Statutory Inj., ECF No. 13 (Jan. 27, 2025); Pl.'s Resp. Instead, Pipe & Piling argues that the government's position, if true, raises the specter of a constitutional issue. Pl.'s Resp. at 9–19. Pipe & Piling, however, does not flesh out this claim, and names a hodgepodge of articles and amendments that it believes this case "implicate[s]." Id. at 9, 17–19. This does not amount to a constitutional claim. Cf. FCC v. Consumers' Rsch., 145 S. Ct. 2482, 2511 (2025) ("[I]mplicating (but not violating) one [constitutional provision] does not compound [with another], in a way that pushes the combination over a constitutional line."). Further, to the extent Pipe & Piling wishes to contend that section 1516a(g)(3)(B) is unconstitutional either facially or as applied to this case, then it would be contending that a "provision of, or amendment made by . . . the [USMCA] implementing the binational panel dispute settlement system . . . violates the Constitution." 19 U.S.C. § 1516a(g)(4)(A). Jurisdiction for such actions, however, is vested exclusively in the United States Court of Appeals for the District of Columbia Circuit, and so the court would not have the power to hear this challenge in any case. Id.

Wilkins v. United States, 598 U.S. 152, 158 (2023).  Even if a statute says that the court can hear a case "only if" the plaintiff takes certain steps, the provision is not properly read as jurisdictional if there are other reasons to doubt that Congress intended such a harsh reading.  Santos-Zacaria, 598 U.S. at 416–17 (citing Arbaugh v. Y&H Corp., 546 U.S. 500, 515–16 (2006)).  Congress need not use "magic words," but statutory interpretation must show that its "likely intent" was a jurisdictional reading.  Henderson, 562 U.S. at 436.

Certain circumstances, however, will suggest that a procedural rule or deadline is jurisdictional as opposed to merely a claims-processing rule.  For example, the deadline to appeal a district court's decision to an appellate court is jurisdictional, even though the rule lacks explicit jurisdictional language.  See Bowles v. Russell, 551 U.S. 205, 209–12 (2007).  "Because Congress decides whether federal courts can hear cases at all, it can also . . . prohibit[] federal courts from adjudicating an otherwise legitimate class of cases after a certain period has elapsed."  Id. at 213 (internal quotation marks omitted).  Further, the court has held that section 1516a(g)(3)(B)'s context and purpose counsels a jurisdictional reading of the notice requirement.  Am. Cast Iron Pipe Co. v. U.S., 405 F. Supp. 3d 1378, 1382 (CIT 2019).  The court has reasoned that a non-jurisdictional reading "could fail to effectuate the . . . statutory purpose" of facilitating review by binational panels instead of domestic courts.  Id. at 1383.

Courts apply particular considerations when interpreting statutes implicating foreign policy.[4]  In treaty interpretation, "the meaning given [treaties] by the departments of government particularly charged with their negotiation and enforcement is given great weight."[5]  Kolovrat v.

---

[4] Section 1516a(g) is one such provision, as it implements Article 10.12 of the USMCA.  See USMCA art. 10.

[5] Section 1516a(g)(3)(B), and the USMCA generally, are not treaties in the formal sense that they have the force of law because they have been ratified by two-thirds of the Senate.  Instead, the USMCA is an executive agreement that Congress implemented via ordinary legislation.  See

Oregon, 366 U.S. 187, 194 (1961). Any judicial ruling affecting the United States's dealings with foreign governments must be undertaken carefully, as judicial interference "could seriously interfere with negotiations being carried on by the Executive Branch and might prevent or render less favorable the terms of an agreement that could otherwise be reached." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 432 (1964).

Ordinarily, any interested party may seek judicial review of an antidumping or countervailing duty determination by Commerce. See 19 U.S.C. § 1516a(a). Under the USMCA, however, member countries may request that a binational panel review another member country's antidumping or countervailing duty determination. USMCA art. 10.12(1). The USMCA mandates that "each Party shall replace judicial review of final antidumping and countervailing duty determinations with binational panel review." USMCA art. 10.12(1). Accordingly, Congress adopted section 1516a(g)(2), which provides that if a USMCA member country requests a binational panel, the panel replaces traditional judicial review, and "no court of the United States has power or jurisdiction to review the determination on any question of law or fact." 19 U.S.C. § 1516a(g)(2). An exception exists, however, if "neither the United States nor [another country] requested review by a binational panel." Id. § 1516a(g)(3)(A)(i). In such a case, the determination is subject to judicial review. Id.

Even when a determination involving a USMCA country is subject to judicial review, the party seeking review must still follow certain procedures not applicable to determinations involving non-USMCA countries. The USMCA mandates that member states implement certain procedural barriers to domestic judicial review in order to facilitate the primacy of the binational

---

United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-113, Sec. 2, 134 Stat. 11 (2019) (codified at 19 U.S.C. § 4501). The principles of treaty interpretation, however, remain applicable given the nature of the USMCA.

panel review system. See USMCA art. 10.12(1), (15)(c)(ii). This mandate is specific, decreeing that each party shall:

> maintain or amend its statutes or regulations to ensure that . . . as a prerequisite to commencing domestic judicial review . . . a Party . . . shall provide notice of such intent to the Parties concerned and to other persons entitled to commence such review procedures of the same final determination no later than 10 days prior to the latest date on which a panel may be requested.

Id. Accordingly, Congress adopted section 1516a(g)(3)(B), which provides that a final determination "is reviewable . . . only if the party seeking to commence review has provided timely notice of its intent to commence such review." 19 U.S.C. § 1516a(g)(3)(B). The party seeking judicial review must provide this notice "to–(i) the United States Secretary and the relevant [USMCA] Secretary;[6] (ii) all interested parties who were parties to the proceeding in connection with which the matter arises; and (iii) [Commerce] or the [U.S. International Trade] Commission, as appropriate." Id. § 1516a(g)(3)(B). Timely notice is "no later than . . . 20 days after" the date of publication for the contested determination.[7] See id. § 1516a(g)(3)(B); Am. Cast Iron, 405 F. Supp 3d at 1382. This 20-day deadline works in concert with other deadlines applicable to determinations involving USMCA countries. The deadline for USMCA member states to request

---

[6] The terms "United States Secretary" and "relevant FTA Secretary" refer to officials in the three USMCA countries who assist in administering dispute settlement proceedings under the USMCA. See 19 U.S.C. § 1516a(f)(6)–(7); USMCA art. 10.16.

[7] The statute is not a model of clarity on this point. Section 1516a(g)(3)(B)(iii) directs the party seeking judicial review to notify other interested parties within "20 days after the date described in subparagraph (A) . . . of subsection (a)(5)." 19 U.S.C. § 1516a(g)(3)(B)(iii). That subsection, however, describes when a party seeking judicial review can bring a case, saying "the 31st day after the date on which notice of the determination is published in the Federal Register." Id. § 1516a(a)(5)(A). It is therefore not entirely clear at first glance what "the date described in subparagraph (A)" is. Id. § 1516a(g)(3)(B)(iii). The only non-absurd answer, however, is "the date on which notice of the determination is published in the Federal Register." Id. § 1516a(a)(5)(A). Otherwise, the deadline for notice would be 20 days after a party can bring a case, and 21 days after the deadline to request a binational panel expires. The court has held as much previously. Am. Cast Iron, 405 F. Supp. 3d at 1382.

binational panel review is 30 days, meaning they will have at least 10 days to decide whether to request a panel or allow judicial review to proceed. USMCA art. 10.12(4). If these 30 days elapse with no request for a binational panel, only then, on day 31, may a party seeking judicial review bring its case. 19 U.S.C. § 1516a(a)(5)(A).

The United States' partners in the USMCA saw this system as critically important during negotiations. Canada in particular long advocated for binational panel review as a way to limit domestic judicial review.[8] See Susan A. Maxson, The Binational Dispute-Resolution Panel Created by the United States-Canada Free Trade Agreement: What Did Canada Win?, 1990 U. Chi. Legal F. 653, 662–64 (1990). During USMCA negotiations, the U.S. objected to this system, but ultimately agreed to the binational panel review system now codified in 19 U.S.C. § 1516a(g) at the behest of Mexico and Canada. M. Angeles Villarreal, Cong. Rsch. Serv., R44981, The United States-Mexico-Canada Agreement (USMCA) at 26 (May 29, 2024).

The text and structure of section 1516a(g)(3)(B) suggests that the 20-day notice requirement is jurisdictional. Section 1516a(g)(3)(B) states that judicial review is available "<u>only</u> if the party seeking to commence review has provided timely notice." 19 U.S.C. § 1516a(g)(3)(B) (emphasis added). This plainly conditions judicial review on compliance with section 1516a(g)(3)(B).[9] The statutory scheme of section 1516a supports this conclusion. First, the other

---

[8] This system was originally codified in the Canada-United States Free Trade Agreement ("CUSFTA") of 1987. CUSFTA art. 1904. It has been reproduced, however, essentially identically in both Article 19 of the North American Free Trade Agreement ("NAFTA") and Article 10 of the USMCA. See NAFTA art. 1904; USMCA art. 10.12(1).

[9] Of course, this language is strikingly similar to the statute that the Supreme Court held non-jurisdictional in Santos-Zacaria. Compare 598 U.S. at 416 ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right."), with 19 U.S.C. § 1516a(g)(3)(B) ("A determination . . . is reviewable . . . only if the party seeking to commence review has provided timely notice of its intent to commence such review."). In that case, however, the broader statutory scheme suggested a non-jurisdictional reading. See Santos-Zacaria, 598 U.S. at 417–19. The opposite is true here.

deadlines in the statute suggest that section 1516a(g)(3)(B) is jurisdictional. For example, a party seeking judicial review may only bring a case 31 days after the publication in the Federal Register of the contested determination, one day after the time limit to request a binational panel has elapsed. 19 U.S.C. § 1516a(a)(5)(A); USMCA art. 10.12(4). Reading of section 1516a(g)(3)(B) as non-jurisdictional, therefore, could result in USMCA members being unable to pre-empt domestic judicial review by requesting a binational panel, because they would only receive notice after the time to request a panel expires. Such a result is incongruous with the USMCA's command that 1516a(g)(3)(B) help "replace judicial review." See USMCA art. 10.12(1), (15). Second, because section 1516a(g)(3)(B) helps protect interested third-parties by ensuring that the court's jurisdiction is not improperly expanded, it functions similarly to the jurisdictional appellate deadline in Bowles. See 551 U.S. at 208. Like that provision, section 1516a(g)(3)(B) governs under what circumstances a case can move from one forum (the binational panel) to a different forum (the Court of International Trade).

The operation and context of section 1516a(g)(3)(B) also support a jurisdictional reading. Almost every provision recently held non-jurisdictional by the Supreme Court falls into one of two categories: a deadline a litigant must meet,[10] or an exhaustion requirement.[11] Section 1516a(g)(3)(B), however, works differently because it gives parties the chance to choose an alternative forum and strip the court of jurisdiction. This is different from provisions governing the "orderly progress of litigation." Henderson, 562 U.S. at 435. Additionally, section 1516a(g)(3)(B) must be read in the context of section 1516a(g) as a whole, which carefully divides

---

[10] See, e.g., Harrow, 601 U.S. at 480; Wilkins, 598 U.S. at 152; Boechler, 596 U.S. at 199; U.S. v. Wong, 575 U.S. 402 (2012); contra Bowles, 551 U.S. at 205.
[11] See, e.g., Santos-Zacaria, 598 U.S. at 411; Fort Bend Cnty., Tex. v. Davis, 587 U.S. 541 (2019); cf. Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010).

up jurisdiction between two different forums: the binational panel and the United States Court of International Trade. See 19 U.S.C. § 1516a(g). Reading section 1516a(g)(3)(B) as non-jurisdictional would upend this careful scheme by creating uncertainty as to which cases will be heard in which forum. This is distinct from a situation where, because there is only one possible forum, reading a procedural rule as jurisdictional may defeat "Congress' likely intent" by creating severe consequences for non-compliance. Henderson, 562 U.S. at 435–36.

Finally, unique considerations weigh in favor of a jurisdictional reading of section 1516a(g)(3)(B). The USMCA requires the United States to implement section 1516a(g)(3)(B) as a way to effectuate the binational panel review system. USMCA art. 10.12(15)(c)(ii). To this end, it contains an emphatic requirement that member countries, in order to facilitate binational panel review, implement the notice provision enshrined in section 1516a(g)(3)(B) as "a prerequisite to commencing domestic judicial review." Id. If the court were to read section 1516a(g)(3)(B) as non-jurisdictional, opening it up to potential exceptions, the court may undermine the United States' ability to live up to its international obligations in the eyes of other USMCA members. Such an action by the court "could seriously interfere with negotiations being carried on by the Executive Branch and might prevent or render less favorable the terms of an agreement that could otherwise be reached." See Banco Nacional de Cuba, 376 U.S. at 432. A non-jurisdictional reading would, at the very least, narrow the rights foreign countries advocated for in a "contract between [] nations." Foster v. Neilson, 27 U.S. 253, 254 (1829). Section 1516a(g)(3)(B) helps these foreign nations choose an alternative forum and strip the court of jurisdiction. Section 1516a(g)(3)(B), therefore, not only supports the preference for binational panels over domestic courts but safeguards the rights foreign nations have negotiated with the United States. See Am. Cast Iron, 405 F. Supp. 3d at 1383. Reading section 1516a(g)(3)(B) as

non-jurisdictional would weaken the rights that Canada and Mexico won without input from those nations. Further, the USMCA's history, language, and context suggest that the member states expected section 1516a(g)(3)(B), and the binational panel review system more generally, to serve as strict limits on the availability of domestic judicial review. See Maxson, supra, at 662–64; Villarreal, supra, at 26. Because "the meaning given [treaties] by the departments of government particularly charged with their negotiation and enforcement is given great weight," it would be inappropriate for a domestic court to weaken a provision such as section 1516a(g)(3)(B) and expand its own power to hear cases. Kolovrat, 366 U.S. at 194. These unique considerations weigh in favor of a jurisdictional reading.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** the government's motion to dismiss, ECF No. 24, and **DENIES** Pipe & Piling's motion for a statutory injunction, ECF No. 13.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated: September 8, 2025
New York, New York